IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ELIZABETH W. BAKER,

    Plaintiff,

vs.          Case No. 10-1253-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 26, 2010, administrative law judge (ALJ) Glenn A. Neel issued his decision (R. at 10-17). Plaintiff alleges that she has been disabled since February 26, 2003 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of November 14, 2007 (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: obesity; degenerative joint disease/degenerative disc disease of the

4

cervical, thoracic, and lumbar spine; degenerative joint disease of the left knee; asthma; and left shoulder bursitis. Furthermore, the ALJ found plaintiff's Crohn's disease, diabetes, and mental impairments to be non-severe (R. at 12-13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 13), the ALJ found at step four that plaintiff is able to perform past work as a telephone solicitor (R. at 17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118,

1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings in this case:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds

> frequently; to stand and/or walk for no more
> than two hours total during an eight-hour
> workday; and to sit for no more than six
> hours total during an eight-hour workday.
> Claimant can occasionally climb ramps/stairs;
> never climb ladders/ropes/scaffolds;
> occasionally balance and stoop; and never
> kneel, crouch, or crawl. She can occasionally
> reach and handle with the non-dominant left
> upper extremity; and she must avoid
> concentrated exposure to temperature extremes
> aud fumes, odors, dusts, gases, and poor
> ventilation. She can be around no hazards,
> including no driving as part of work, due to
> side effects of medication. In other words, I
> find the claimant is able to perform less
> than the full range of "sedentary" work as
> defined in 20 CFR 416.967(a).

(R. at 13).

The ALJ's weight limitations were in accordance with the opinion of Dr. Reed that plaintiff not lift more than 20 pounds (R. at 14, 357). The ALJ also indicated that he essentially agreed with the state agency assessment by Dr. Goering, a nonexamining physician (R. at 407-414), with slight modification based upon the consultative assessment by Dr. Chaudry (R. at 15).

Dr. Chaudry examined and interviewed the plaintiff, and prepared a physical RFC assessment at the request of the defendant (R. at 444-458). In his physical examination, he noted that plaintiff had a painful range of motion in the lumbosacral spine with muscle tenderness. In the left shoulder, he found a diminished range of motion with tenderness (R. at 446). His RFC findings included the following limitations:

-lift and carry up to 10 lbs. occasionally

7

(R. at 448)

-sit for 4 hours, stand for 3 hours, and walk for 1 hour in an 8 hour workday (R. at 449)

-never reach overhead with her left hand (R. at 450)

-occasionally reach (other than overhead), handle, finger, feel and push/pull with the left hand (R. at 450)

-occasional use of foot controls (R. at 450)

-never climb ladders or scaffolds (R. at 451)

-never stoop, kneel, crouch or crawl (R. at 451)

-occasionally balance & climbs stairs/ramps (R. at 451)

-never be around unprotected heights (R. at 452)

-never be around humidity, wetness, dust, odors, fumes (R. at 452)

-limit to occasional use of moving mechanical parts, operating a motor vehicle, and being around extreme temperatures & vibrations (R. at 452)

Dr. Chaudry stated that plaintiff could not perform overhead reaching with the left hand/arm because of left shoulder tendonitis. He further indicated that repetitive bending and lifting more than 10 pounds was limited due to lower back/neck pain and osteoarthritis. He opined that these limitations have been present for 7 years (R. at 453).

The ALJ analyzed the opinions of Dr. Chaudry as follows:

Dr. Chaudry's Medical Source Statement is

8

> essentially consistent with "sedentary" work. I have given Dr. Chaudry's opinion some weight; however, Dr. Chaudry'S opinions regarding claimant's ability to sit, stand, and walk without interruption are obviously solely based on claimant's statements, e.g. that she could walk only three minutes at one time. Additionally, his opinion that claimant can never reach overhead and has other significant limits regarding the left upper extremities is not supported by the objective findings or the results of the x-rays of her left upper extremity. Also, Dr. Chaudry's opinion that claimant can never stoop is not supported by the medical evidence of record as a whole.
>
> ...a one-time consultative examiner, such as Dr. Chaudry, is not a "treating physician" to be primarily relied upon in Social Security disability determinations. **Additionally, the fact that Dr. Chaudry failed to provide any medical "findings" to support his disability statement should be sufficient to dispose of this opinion weight issue. Dr. Chaudry's opinion is clearly based for the most part upon claimant's subjective complaints and self-reported symptoms, which I do not find to be very credible.**

(R. at 16, emphasis added).

As a general rule, the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Dr. Chaudry is an examining physician. The ALJ gave greater weight to the opinions of Dr. Goering, an agency physician who never saw

9

or examined plaintiff.[1]

The ALJ discounted the opinions of Dr. Chaudry because, according to the ALJ, Dr. Chaudry failed to provide any medical findings to support his opinions, and the opinions of Dr. Chaudry were clearly based for the most part upon plaintiff's subjective complaints and self-reported symptoms. In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx.

---

[1] Dr. Goering's assessment is dated September 9, 2008 (R. at 414); Dr. Chaudry's assessment is dated December 8, 2009 (R. at 453). Thus, Dr. Goering, who never saw or examined the plaintiff, did not have before him the assessment of Dr. Chaudry when making his own assessment.

10

819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

The ALJ does not cite to any evidence in the record to support his assertion that Dr. Chaudry's opinions were based for the most part upon plaintiff's subjective complaints and self-reported symptoms. Dr. Chaudry, in addition to taking information from the plaintiff (R. at 444-445), also performed a physical examination of the plaintiff (R. at 445-446). His examination found a painful range of motion with tenderness in the lumbosacral spine, and a diminished range of motion with

11

tenderness in the left shoulder (R. at 446). This examination included detailed findings on a "range of joint motion evaluation chart" of the back, neck, hip, knees, ankles, shoulders, elbows, wrists, and hands (R. at 455-457), and findings of plaintiff's range of motion of the lumbosacral and cervical spine (R. at 458). Nothing in Dr. Chaudry's report indicates that he primarily relied on plaintiff's subjective complaints. Furthermore, contrary to the ALJ's assertion that Dr. Chaudry failed to provide any medical findings to support his opinions, Dr. Chaudry in fact performed an examination of the plaintiff, including an examination and detailed report of the range of motion of plaintiff's back, neck, hip, knees, ankles, shoulders, elbows, wrists, hands, and lumbosacral and cervical spine. There is no medical evidence indicating that the examination findings regarding plaintiff's range of motion are inconsistent with the opinions of Dr. Chaudry. As the court indicated in <u>Victory</u>, the opinions of Dr. Chaudry may well have been based on his first-hand examination and observation of the plaintiff during the examination rather than on plaintiff's subjective complaints, as the ALJ speculated. For these reasons, the court concludes that the ALJ's assertion that Dr. Chaudry's opinions are based for the most part on plaintiff's subjective complaints and self-reported symptoms is not supported by substantial evidence. Therefore, this case shall be remanded in order for the defendant to

consider the opinions of Dr. Chaudry in light of the fact that there is no evidence that Dr. Chaudry relied for the most part on plaintiff's subjective complaints, and in light of the detailed examination by Dr. Chaudry, including his numerous findings regarding plaintiff's range of motion.

The ALJ stated that he "essentially agree[d]" with the assessment by Dr. Goering, a nonexamining physician, with "slight modification" based upon the opinions of Dr. Chaudry (R. at 15). However, the ALJ offered no explanation for why he essentially agreed with Dr. Goering. Furthermore, a comparison of the opinions of Dr. Goering and Dr. Chaudry with the ALJ's RFC findings indicates that the ALJ's RFC findings adopted the opinions of Dr. Chaudry in many particulars.

The ALJ adopted the lifting and carrying limitations set forth not only by Dr. Goering (R. at 408), but also by Dr. Reed, who performed a consultative examination on the plaintiff (R. at 356-357). Regarding postural limitations, Dr. Goering and Dr. Chaudry agreed in regards to plaintiff's ability to climb and balance, and those findings are reflected in the ALJ's RFC (R. at 409, 451, 13). However, Dr. Goering and Dr. Chaudry disagreed on the extent of plaintiff's limitation in four postural categories:

| category | Dr. Goering | Dr. Chaudry | ALJ finding |
| --- | --- | --- | --- |
| stoop | occasional | never | occasional |
| kneel | occasional | never | never |

13

| crouch | occasional | never | never |
| crawl | occasional | never | never |

(R. at 409, 451, 13). As can be seen, in the four postural categories in which Dr. Goering and Dr. Chaudry disagreed regarding the extent of plaintiff's limitations, the ALJ adopted the opinion of Dr. Chaudry in 3 of those 4 areas of disagreement, i.e., that plaintiff can never kneel, crouch or crawl. However, in one category, the ALJ adopted the opinion of Dr. Goering that plaintiff could occasionally stoop. The ALJ stated that Dr. Chaudry's opinion that plaintiff can never stoop is not supported by the medical evidence of record as a whole (R. at 16). However, the ALJ failed to indicate why the medical evidence did not support Dr. Chaudry's opinion that plaintiff can never stoop. The failure of the ALJ to adopt the opinion of Dr. Chaudry that plaintiff cannot stoop is especially puzzling in light of the fact that on every other postural limitation in which Dr. Chaudry and Dr. Goering had disagreed, the ALJ had adopted the opinion of Dr. Chaudry that plaintiff could not engage in those activities.

According to SSR 96-9p, although most postural activities are not required in sedentary work, a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the claimant is disabled would usually apply. 1996 WL 374185 at *7-8. For this reason it is critical for the ALJ, when this case is remanded, to provide a sufficient

evidentiary basis for finding whether or not plaintiff can stoop.

Dr. Chaudry indicated in his assessment that plaintiff cannot reach overhead with the left upper extremity; Dr. Chaudry also indicated that plaintiff can only occasionally do other reaching with the left upper extremity, and can only occasionally handle, finger, feel, and push/pull with the left upper extremity (R. at 450). Dr. Chaudry stated that the limitation of no overhead reaching was based on a finding of left shoulder tendonitis (R. at 453). Dr. Chaudry's examination indicated that plaintiff had a diminished range of motion in her left shoulder with anterior and posterior deltoid tenderness (R. at 446). However, the ALJ stated that the opinion of Dr. Chaudry that plaintiff can never reach overhead and has other significant limitations with her left upper extremity was not supported by the objective findings or the results of the x-rays of her left upper extremity (R. at 16). An x-ray of the left shoulder showed "essentially unremarkable left shoulder with mild osteopenia present" (R. at 461, 15).

The ALJ indicated that he essentially agreed with the opinions of Dr. Goering, with slight modification based on the opinions of Dr. Chaudry (R. at 15). Dr. Goering found that plaintiff had no manipulative limitations (i.e., reaching, handling, fingering and feeling) (R. at 410). Dr. Chaudry, as noted above, opined that plaintiff cannot reach overhead with the

15

left upper extremity, and is limited to only occasional other activity with the left upper extremity. The ALJ found that plaintiff can only "occasionally" reach and handle with the non-dominant left upper extremity (R. at 13). By limiting plaintiff to occasional reaching and handling with the left upper extremity, the ALJ rejected the opinions of Dr. Goering on those particulars, and adopted in part the opinion of Dr. Chaudry, despite the ALJ's assertion that the limitations of Dr. Chaudry regarding the left upper extremity were not supported by the evidence. However, the ALJ offered absolutely no explanation for adopting some of the limitations set forth by Dr. Chaudry regarding the use of plaintiff's left upper extremity, but not others. Furthermore, the court will not speculate as to why the ALJ adopted some of Dr. Chaudry's limitations regarding plaintiff's left upper extremity, but not others. According to SSR 96-8p, the RFC assessment "must" include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical and nonmedical evidence. The ALJ failed to comply with SSR 96-8p when making his findings regarding the extent of plaintiff's left upper extremity limitations. For this reason, the court concludes that the ALJ's findings regarding the limitations on the use of plaintiff's left upper extremity are not supported by substantial evidence.

The ALJ indicated that he gave great weight to the x-ray

results of the left shoulder when rejecting the opinions of Dr. Chaudry regarding the limitations in plaintiff's left upper extremity. However, the ALJ offered no explanation and did not cite to any medical evidence that the x-ray findings supported some of the limitations by Dr. Chaudry, but not others. When this case is adjudicated on remand, it must be kept in mind that an ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his/her determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

In summary, the ALJ erred in his analysis of the opinions of Dr. Chaudry. The ALJ also erred by failing to cite to specific medical or other evidence to support portions of his RFC findings. Therefore, this case shall be remanded in order for the ALJ to properly consider the opinions of Dr. Chaudry and to make RFC findings in accordance with SSR 96-8p.

**IV. Did the ALJ err in his step four analysis?**

Plaintiff argues that the ALJ failed to make the required findings at step four. At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and

3) the ability of the individual to return to the past occupation given his or her residual functional capacity. <u>Henrie v. United States Dep't of HHS</u>, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1303 (10th Cir. 2007); <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).[2]

---

[2]In <u>Winfrey</u>, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

18

An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis. Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[3] When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.). However, when the ALJ makes proper findings at step five, any error at step four will be

---

Winfrey, 92 F.3d at 1025.

[3]The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760. The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator. 331 F.3d at 761. As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

19

deemed harmless error.  Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

The court will not reach this issue because it may be impacted when this case is remanded after giving proper consideration to the opinions of Dr. Chaudry and making proper RFC findings in accordance with SSR 96-8p.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004)  However, on remand, any step four findings must be made in accordance with the regulations and case law set forth above.

**V. Did the ALJ err in analyzing plaintiff's credibility?**

Plaintiff argues that the ALJ erred in his analysis of plaintiff's credibility.  The court will not reach this remaining issue because it may be affected by the ALJ's resolution of the case on remand after giving proper consideration to the opinions of Dr. Chaudry and making new RFC findings in accordance with SSR 96-8p.  See Robinson v. Barnhart, 366 F.3d at 1085.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of April 2011, Topeka, Kansas.

s/ Sam A. Crow  
Sam A. Crow, U.S. District Senior Judge